UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMY ANAGNOS and THE ESTATE OF ) <br> THEODORE ANAGNOS, DECEASED, ) <br>   Plaintiffs ) <br> ) <br> V. ) <br> ) <br> THOMAS HULTGREN, in his official and ) <br> personal capacities, CHRISTOPHER FINNERAL, ) <br> in his personal and official capacities, OFFICER ) <br> JOHN DOE, in his personal and official capacities, ) <br> and THE CITY OF LOWELL, MASSACHUSETTS ) <br>   Defendants ) | C.A. NO. 04-11664-JLT |

**DEFENDANT CHRISTOPHER FINNERAL'S
MEMORANDUM IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

**I. STATEMENT OF THE CASE**

The Plaintiff, the Estate of Theodore Anagnos, has brought suit against Christopher Finneral, a police officer with the City of Lowell for negligence, wrongful death and violation of the decedent's civil rights, due to the decedent's death after being struck by a fleeing motor vehicle during a police pursuit. The operator of the fleeing motor vehicle, Thomas Zazarra, is not a party to this proceeding.

**II. STATEMENT OF THE FACTS**

On July 31, 2001, Officer Finneral[1] along with his partner, Officer Hultgren was engaged in an on-duty undercover surveillance at CVS Pharmacy, at 1140 Bridge Street, Lowell, Massachusetts relative to a robbery investigation. (Ex. 3, pg 22). Finneral was operating a Buick Century, which he described as a "smooth car", an undercover vehicle which would be less likely to be spotted as a police car. (Ex. 3, pg 20-21). The robbery that was being investigated was an oxycontin robbery. (Ex. 3, pg 24). While conducting surveillance, the officers observed a Toyota approach and pull up to a house that was the subject of the surveillance. (Ex. 3, pg. 26). During this surveillance, Finneral observed a person come out of the house and head towards the Toyota, where Finneral stated he observed a transaction between the occupants and the person that came out of the house. (Ex. 3, pg 26). Finneral

---

[1] At the time of the surveillance, both Finneral and Hultgren held the rank of Detective with the City of Lowell Police Department. (Ex. 3, pg 25).

1

believed that the transaction was a drug transaction. (Ex. 3, pg 26). After the transaction, the Toyota then left and Finneral and Hultgren followed the Toyota. (Ex. 3, pg 28). The Toyota was followed for a couple of miles while the Toyota zigzagged its way over towards the DeMoulas parking lot on Bridge Street. (Ex. 3, pg 28). The Toyota eventually entered the parking lot, making several loops around the lot. (Ex. 3, pg 28). At some point while the Toyota was making loops in the parking lot, a black Mercedes was observed in the lot, though Officer Finneral did not make a connection between the Toyota and the Mercedes until both vehicles pulled on to Ashland Street. (Ex. 3, pg 29). There, the vehicles pulled up next to each other and Finneral observed another drug transaction. (Ex. 3, pg 35). Officers Finneral and Hultgren, then began to slowly approach the two vehicles. (Ex. 3, pg 35). As both officers approached, the Toyota speed off, Officer Hultgren jumped out of the "smooth car" and began to yell to the Mercedes to stop. (Ex. 3, pg 38). The Mercedes did not stop and Hultgren continued to yell at the operator of the Mercedes to stop. (Ex. 3, pg 38). Officer Finneral at that point, decided to stay with and did stay with his partner, Officer Hultgren, who was engaged with the Mercedes. (Ex. 3, pg 38-39). At this point, Hultgren was running next to the moving Mercedes and continued to yell to the operator to stop. (Ex. 3, pg 40). Eventually, the Mercedes made it out of the parking lot and began to accelerate on to Willard Street. (Ex. 3, pg 43). Officer Finneral pursued the Mercedes on to Willard Street. While on Willard Street, Finneral estimated the Mercedes' speed at close to fifty miles an hour. (Ex. 3, pg 42-43). Finneral estimated the pursuit lasted twenty (20) seconds, before the Decedent was struck by the Mercedes. (Ex. 3, pg 44). The Decedent died at the scene.

      Officer Finneral did not know the operator of the Mercedes, Thomas Zazzara nor did he know the Decedent, Theodore Anagnos. (Ex. 2, ¶2¶3). Officer Finneral never intended to harm either Zazzara, Anagnos, or anyone else. (Ex. 2, ¶4¶5). Officer Finneral's purpose in pursuing Zazzara was to apprehend an individual that he believed had committed a drug offense, and one who he also believed had hit Officer Hultgren with the Mercedes. (Ex. 2, ¶5). It was not Officer Finneral's intent to worsen the legal plight of anyone. (Ex. 2, ¶6).

      The Plaintiff admits that it has no evidence, and will not be able to produce any evidence that Finneral (or for that matter Hultgren) intended to injure Theodore Anagnos, Thomas Zazzara or anyone else or to worsen their legal plight. (Ex. 4, Responses 2 and 3).

      The Plaintiff was at all times relevant in this matter, a police officer with the City of Lowell. (First Amended Answer of Defendant Finneral, ¶5). Finneral has asserted as an affirmative defense, immunity from negligence suits pursuant to **M.G.L. c. 258, § 2.** (Third Affirmative Defense at First Amended Answer of Defendant Finneral).

2

### III.  STATEMENT OF THE ISSUES

1. It is undisputed that the Plaintiff has no evidence that Officer Finneral intended to either kill, injure or worsen the legal plight of Thomas Zazzara, (the fleeing felon) or any other person, including the decedent, Theodore Anagnos.  Therefore, the Plaintiff will not be able to prove that element necessary for liability to attach under **42 U.S.C. §1983** and under the holding of **County of Sacramento v. Lewis, 523 U.S. 833, 836, 118 S.Ct. 1708, 1711-1712**,**(1998)** Officer Finneral is entitled to summary judgment.

2. As a matter of law, the undisputed facts are that the pursuit in this case did not shock the conscience.

3. It is undisputed that Officer Finneral was at the time of the death of Theodore Anagnos, acting as a police officer in pursuit of Thomas Zazzara, who had fled the scene of a crime.  It is also undisputed that Officer Finneral has asserted as an affirmative defense immunity as an employee for negligence claims.  As such, with regard to allegations that Finneral was negligent, Officer Finneral is immune from liability for negligence claims. Accordingly, Officer Finneral is entitled to summary judgment on the state claims for negligence.

### IV.  STATEMENT OF THE APPLICABLE LAW

1.  **Standard of Review for Summary Judgment**

The role of summary judgment in civil litigation is to pierce the boilerplate of the pleadings and assay the parties' proof in an effort to determine whether trial is actually required. **McIntosh v. Antonino, 71 F. 3d 29, 33 (1st Cir. 1995)(citing Wynn v. Tufts Univ. School of Medicine, 976 F. 2d 791, 794 (1st Cir. 1992).**  A motion for summary judgment will be granted only upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  **Hinchey v. NYNEX Corp., 144 F. 3d 134, 140 (1st Cir. 1998)(quoting Fed. R. Civ. P. 56(c). Lehman v. Prudential Ins. Co. of America, 74 F.3d 323 (1st Cir. 1996).**

Summary judgment shall be entered in favor of a moving party when the pleadings, affidavits and depositions establish there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  **Lehman v. Prudential Ins. Co. of America, 74 F.3d 323 (1st Cir. 1996); Hope Furnace Associates, Inc. v. F.D.I.C., 71 F.3d 39 (1st Cir.**

3

1995).  A material fact is one which has the potential to affect the outcome of the suit under the applicable law.  ***Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996).***  A genuine issue is one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, . . . would permit a rational fact finder to resolve the issue in favor of either party.  ***Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).***  The plaintiff cannot rely upon the allegations contained in his complaint to get beyond a motion for summary judgment.  He must present evidence to counter that which the defendant presents and cannot rest upon the allegations in his pleadings.  ***Vargas v. Royal Bank of Canada, 604 F.Supp. 1036 (D.C. Puerto Rico 1985).***

In deciding a motion for summary judgment the facts must be viewed "in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor".  ***Borshow Hospital & Medical Supplies, Inc. v. Cesar Castillo, Inc., 96 F. 3d 10, 14, (1st Cir. 1996).***  In order to defeat the entry of summary judgment, the non-moving party must submit sufficient evidence supporting the claimed factual dispute to require a choice between the parties differing versions of the truth at trial.  ***LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).***  The court hearing the summary judgment should not consider conclusory allegations, improbable inferences, and unsupported speculation.  ***Galloza v. Foy, 389 F.3d 26, 28 (1st Cir. 2004).***

### V.    ANAYLSIS OF THE APPLICABLE LAW ON THE ISSUE OF SUMMARY JUDGMENT

1. It is undisputed that the Plaintiff has no evidence that Officer Finneral intended to either kill, injure or worsen the legal plight of Thomas Zazzara, (the fleeing felon) or any other person, including the decedent, Theodore Anagnos.  Therefore, the Plaintiff will not be able to prove that element necessary for liability to attach under ***42 U.S.C. §1983*** and under the holding of ***County of Sacramento v. Lewis, 523 U.S. 833, 836, 118 S.Ct. 1708, 1711-1712, (1998)*** Officer Finneral is entitled to summary judgment..

In Count V of her complaint, Plaintiff claims that Defendant Christopher Finneral violated the Decedent's civil rights under ***42 U.S.C. §1983*** based upon his involvement in a police

4

pursuit of a fleeing suspect. Specifically, in Paragraph 62 of the Complaint, the Plaintiff states:

> On information and belief, Defendants Hultgren[2] and Finneral intended that the high speed chase would result in death or seriously (sic) bodily injury to Zazarra or to another citizen or resident of the Defendant City. The allegations of this paragraph are expected to gain evidentiary support during the course of discovery.

*"Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or federal law". . . . "Nevertheless, even outside the context of a seizure, appellate courts have noted that a person injured as a result of police misconduct may prosecute a substantive due process claim".* **Evans v. Avery, 100 F.3d 1033, 1036 (1st Cir. 1996).** Prior to 1998, there was a conflict among the Circuits as to the standard of liability for individual police officers who were involved in police automobile pursuits resulting in injury to either fleeing suspects or innocent bystanders. That conflict was resolved in 1998, when the Supreme Court held that an individual police officer will only be subject to liability under **42 U.S.C. §1983** for death or serious injury during a police chase if it can be proven that the officer had conducted the chase with "*a purpose to cause harm unrelated to the legitimate object of arrest*" since only that intent "*will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation*." **County of Sacramento v. Lewis, 523 U.S. 833, 836, 118 S.Ct. 1708, 1711-1712, (1998).** The Supreme Court further noted that:

> "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." **Id. at 1717**. . . . "Just as a purpose to cause harm is needed for Eighth Amendment liability in a riot case, so it ought to be needed for due process liability in a pursuit case. Accordingly, we hold that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." Id. at 1720.

Thus in order for the Plaintiff to recover against Officer Finneral under **42 U.S.C. §1983** the Plaintiff must produce some evidence that Officer Finneral intended to harm Mr. Zazzara, the Decedent or someone else, or to worsen their legal plight. The Plaintiff cannot meet this

5

burden and in fact admitted it cannot[3].

Accordingly, Officer Finneral is entitled to summary judgment on Plaintiff's federal civil rights claim under Count V.

### 2. As a matter of law, the undisputed facts are that the pursuit in this case did not shock the conscience

In addition to the Plaintiff's failure to muster any evidence that puts in dispute the intent of Officer Finneral, summary judgment still should be granted Officer Finneral, since his actions during this pursuit did not shock the conscience.

In the ***Sacramento*** case that the Supreme Court decided, the police chase lasted 75 seconds, through a residential neighborhood at speeds of up to 100 miles per hour resulting in the death of a motorcycle passenger, who was crushed by the police car as it tried to stop after the motorcycle skidded along the roadway. ***Id. at 1712-13.*** The chase by the officer was in violation of Sacramento County Sheriff's Department's General Order on police pursuits. ***Id. at 1712.*** Despite these facts, the Supreme Court, in reinstating the summary judgment entered by the District Court[4] noted:

> Smith (the officer in ***Sacramento***) was faced with a course of lawless behavior for which the police were not to blame. They had done nothing to cause Willard's high-speed driving in the first place, nothing to excuse his flouting of the commonly understood law enforcement authority to control traffic, and nothing (beyond a refusal to call off the chase) to encourage him to race through the traffic at breakneck speed forcing other drivers out of their travel lanes. Willard's outrageous behavior was practically instantaneous, and so was Smith's instinctive response. While prudence would have repressed the reaction, the officer's instinct was to do his job as a law enforcement officer, not to induce Willard's lawlessness, or to terrorize, cause harm, or kill. Prudence, that is, was subject to countervailing enforcement considerations, and while Smith exaggerated their demands, there is no reason to believe that they were tainted by an improper or malicious motive on his part.

Regardless whether Smith's behavior offended the reasonableness held up by tort law or

---

[2]    Officer Thomas Hultgren was dismissed from the lawsuit by the Plaintiff on **February 15, 2006**.
[3]    In fact, in her response, Plaintiff states that she "*makes no claim that any defendant intended to injure Theodore Anagnos, Thomas Zazzara, or anyone else.* **Ex. 4, ¶3.**
[4]    Given the posture of the case, the test as to whether a particular chase "shocks the conscience" is left to the Court.

6

the balance struck in law enforcement's own codes of sound practice, it does not shock the conscience, and petitioners are not called upon to answer for it under § 1983. ***Id at 1721.***

Prior to the decision in ***Sacramento,*** the First Circuit adopted a similar rule. In ***Evans v. Avery,* 100 F.3d 1033,1038 (1st.Cir.,1996),** the Court of Appeals held that in police pursuit cases "*police officers' deliberate indifference to a victim's rights, standing alone, is not a sufficient predicate for a substantive due process claim".* Utilizing that standard, the First Circuit in ***Evans*** reviewed the circumstances surrounding the police conduct in the high speed pursuit.[5] During that pursuit, in which a suspect's vehicle struck and injured a pedestrian during the pursuit the Court found that such conduct did not shock the conscience so as to give rise to a substantive due process claim by pedestrian. ***Id. at 1039.*** The police chase in ***Evans*** had lasted no more than two minutes, covered only about half a mile, the vehicles' speeds never exceeded 50 miles per hour and the chase occurred in densely populated area at time when people would likely be ambling about. ***Id. at 1038.*** Moreover, the Court in ***Evans*** stated that liability would not be imposed on the officers even where the officers did not seriously consider alternatives to hot pursuit, concluding that such conduct added up to no more than possible negligence. ***Id. at 1038.*** The ***Evans*** Court finally compared the facts involved in the case before it to other police pursuit cases to evaluate the conduct before them. Noting that chases up to 105 m.p.h. for an individual suspected of stealing $17 worth of gasoline did not shock the conscience, the ***Evans*** Court concluded that the officers' actions in ***Evans*** did not "shock the conscience". ***Id. at 1039. See Boveri v. Town of Saugus,* 113 F.3d 4 (1st Cir.,1997)** ; where conduct of police officers in engaging in high-speed pursuit of suspect they first encountered upon receiving report of disturbance at fast-food restaurant did not "shock the conscience," and officers thus did not violate substantive due process rights of plaintiff whose vehicle was struck by suspect's vehicle, despite plaintiff's contention that officers violated departmental rules, state

---

[5] Like the situation in ***Sacramento***, this was another case where the Court as a matter of law reviewed the circumstances of the chase to determine whether it shocked the conscience.

7

law, and order from dispatcher to cease and desist.  **See also, Ward v. City of Boston, 367 F.Supp.2d 7 (D.Mass.,2005)**;  where a motorist sued city police officers, stemming from accident caused by vehicle of suspect fleeing officers failed to establish that officers' conduct shocked conscience; notwithstanding officers' decision to follow suspect wrong way onto freeway.  Accordingly, Officer Finneral is entitled to summary judgment as to Counts V.

> 3. It is undisputed that Officer Finneral was at the time of the death of Theodore Anagnos, acting as a police officer in pursuit of Thomas Zazzara, who had fled the scene of a crime.  It is also undisputed that Officer Finneral has asserted as an affirmative defense immunity as an employee for negligence claims.  As such, with regard to allegations that Finneral was negligent, Officer Finneral is immune from liability for negligence claims. Accordingly, Officer Finneral is entitled to summary judgment on the state claims for negligence.

As for the claims by the Plaintiff under state law for negligence, it is undisputed that Officer Finneral was acting in his capacity as a police officer in the City of Lowell at the time of the death of Mr. Anagnos.  Officer Finneral has asserted as an affirmative defense, the protections of **M.G.L. c. 258, §2,** which grants employees of municipalities, immunity from suits for negligence.   Thus any claims the Plaintiff has for negligence may lie against the City of Lowell, but not against Officer Finneral.  Accordingly, Officer Finneral is entitled to summary judgment as to Counts I, II and III.

## VI.     CONCLUSION

For the reasons stated above, the Defendants ask that summary judgment on Counts I, II, III and V of Plaintiff's complaint be granted.

|  |  |
|---|---|
|  | Respectfully submitted<br>By Defendant<br>Christopher Finneral |
|  | /s/"Thomas J. Freda"<br>Thomas J. Freda , BBO #178150<br>**Monahan & Padellaro**<br>43 Thorndike Street<br>Cambridge, MA  02141 |
| Dated: April 11, 2006 | Tel: (617)-494-1188 |

9