IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF MASSACHUSETTS

AMY ANAGNOS and THE ESTATE OF
THEODORE ANAGNOS,

        Plaintiffs,

v                                          Case No: 04-11664-JLT

THOMAS HULTGREN, in his official
and personal capacities,
CHRISTOPHER FINNERAL, in his personal
and official capacities,
OFFICER JOHN DOE, in his personal
and official capacities, and
THE CITY OF LOWELL, MASSACHUSETTS,

        Defendants.

---------------------------------

| | |
|---|---|
| ROLAND L. MILLIARD | DANIEL S. SHARP, PC |
| Counsel for plaintiffs | Co-counsel for plaintiffs |
| 1470 Lakeview Avenue, Unit 5 | 48 Locust Street |
| Dracut, MA  01826 | Marblehead, MA  01945 |
| 978-957-6799 | 781-639-1862 |
| | |
| ATTORNEY KIMBERLY McMAHON | ATTORNEY THOMAS FREDA |
| City Solicitor | Attorney for Defendant-Officers |
| City Hall, Law Department | 43 Thorndike |
| 375 Merrimack Street, RM. 51 | Cambridge, MA  02141 |
| Lowell, MA  01852-5986 | 617-494-1188 |
| 978-970-4050 | |

_____

PLAINTIFF'S OPPOSITION TO DEFENDANT-FINNERAL'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

      The plaintiff appears to oppose Defendant-Finneral's motion for summary judgment.

Defendant-Finneral relies primarily upon <u>County of Sacramento v. Lewis</u>, 523 U.S. 833 (1998)

to claim that a violation of 42 USC Section 1983 can only be found in a high-speed chase where the pursuing officer attempts to "cause harm unrelated to the legitimate object of arrest."

The Lewis case is factually distinct from the case at bar, however, and should not be so inflexibly or so broadly applied as the defendant suggests.

### *Lewis* vs. The Present Case

There is a critical, factual distinction between Lewis and the present case. That difference is that in Lewis, the person who was killed was a passenger on the chased vehicle (a motorcycle.) In this case, by contrast, the person killed was the innocent, off-duty Officer Anagnos.

Five years after Lewis was decided, the Supreme Court held:

> [W]e recognized in County of Sacramento v. Lewis, 523 U.S. 833, 846, 140 L. Ed. 2d 1043, 118 S. Ct. 1708 (1998), that deprivations of liberty caused by "the most egregious official conduct," id., at 846, 847-848, n. 8, 140 L Ed 2d 1043, 118 S Ct 1708, may violate the Due Process Clause. While we rejected, in Lewis, a § 1983 plaintiff's contention that a police officer's deliberate indifference during a high-speed chase that caused the death of a motorcyclist violated due process, id., at 854, 140 L Ed 2d 1043, 118 S Ct 1708, we left open the possibility that **unauthorized police behavior in other contexts** might "shock the conscience" and give rise to § 1983 liability. Id., at 850, 140 L Ed 2d 1043, 118 S Ct 1708.

Chavez v. Martinez, 538 U.S. 760, 774 (U.S. 2003). (Emphasis added.)

Causing the death of the innocent Anagnos places this case in an "other context" as contrasted with Lewis.

In Lewis, it was obvious that the person telling the motorcyclist to stop was a police officer. It was equally obvious that the motorcyclist (whose passenger was killed) had committed an offense. County of Sacramento v. Lewis, 523 U.S. 833, 836 (U.S. 1998). ("[Officer] Stapp turned

2

on his overhead rotating lights, yelled to the boys to stop, and pulled his patrol car closer to Smith's, attempting to pen the motorcycle in.")

By contrast, there is no claim in this case that Defendant-Finneral's partner, Officer Hultgren, had identified himself as a police officer. (See, Defendant's Statement of Undisputed Facts.)  (See, Exhibit 1; Finneral DT, pp. 38 – 41.)  Nor is it obvious that Zazarra had committed any offense at all.

Before the officer in <u>Lewis</u> gave chase, the motorcyclist was already operating at a "high speed." Id.  It cannot reasonably be argued that the officer in <u>Lewis</u> initiated the chain of events that lead to the plaintiff's death.

By contrast, it was Defendant-Finneral's actions that initiated the high speed chase in the case at bar. (<u>See</u>, Defendant's Brief, pg. 2.)

Ignoring the "context" that the Lewis Court said was important ("**other contexts** might 'shock the conscience' and give rise to § 1983 liability." Id., at 850), Defendant-Finneral claims that **only** an intention to injure can lead to liability.  This notion was rejected in <u>Chavez v. Martinez</u>, 538 U.S. 775 (U.S. 2003), where the Court said that official conduct is "**most likely** to rise to the conscience-shocking level" where it is "conduct intended to injure in some way unjustifiable by any government interest." Id., at 849, 140 L Ed 2d 1043, 118 S Ct 1708. <u>Chavez v. Martinez</u>, 538 U.S. 760, 775 (U.S. 2003). (Emphasis added.)

The Chavez Court's post-<u>Lewis</u> statement that substantive due process is "**most likely**" to be violated where injury is intended cannot be squared with the defendant's argument that substantive due process can **only** be offended where injury is intended.

To say, as the defendant contends, that there is one and only one standard for shocking the conscience fails to take into account the "context" that the Lewis and Chavez Courts demand.[1]  It also fails to take into account the fact that the question of whether a *specific person's* rights were violated.  This is the question that a trial court must decide.

It is a *specific person* who brings a claim that his rights to due process have been violated.  The specific person bringing that claim in Lewis was a participant in the high-speed travel that caused the chase that lead to his death.  The "victim" in the Lewis case had some culpability.  By contrast, Anagnos was an entirely innocent.  *His* rights – not the rights of a criminal participant – were violated by Officer Finneral.  It cannot be that the substantive due process expectations of a participant in criminal activity are **the same** as the due process rights of an entirely innocent man.  But that is what the defendant's "one-standard-fits all" interpretation of Lewis would lead this court to conclude.[2]

That the status of the victim must be considered in the substantive due process analysis is counseled by the Court's statement that:

> "The phrase [due process of law] formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights. Its application is less a matter of rule.  Asserted denial is to be tested by an appraisal of the totality of facts in a given case.  That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial." Betts v. Brady, 316 U.S. 455, 462, 86 L. Ed. 1595, 62 S. Ct. 1252 (1942).

---

[1] "[S]ubstantive due process demands an exact analysis of context and circumstances before deliberate indifference is condemned as conscience-shocking." Lewis, at 523 U.S. 833).

[2] Also in legal contrast to Lewis, there was a clearly established right to be free from due process violations during a high-speed pursuit in the First Circuit on the date that Officer Anagnos died. (See, Lewis, 523 U.S. at 855; Evans v. Avery, 100 F.3d 1033 (1st Cir. 1996).)

Lewis, at 523 U.S. 850.

Finally, this case is distinguished from Lewis by the Lewis Court's finding that:

> [The officer] was faced with a course of lawless behavior for which the police were not to blame. **They had done nothing to cause** Willard's high-speed driving in the first place, nothing to excuse his flouting of the commonly understood police authority to control traffic, and nothing (beyond a refusal to call off the chase) to **encourage him to race through traffic** at breakneck speed.
>
> Lewis, at 523 U.S. 855. (Emphasis added.)

A jury could reasonably find that Finneral caused the high-speed chase and "encouraged [Zazarra] to race through traffic at breakneck speed."

## 1. First Circuit Cases Do Not Favor the Defendant

First Circuit cases do not require a finding in the defendant's favor. Defendant-Finneral relies upon Evans v. Avery, 100 F.3d 1033 (1st Cir. 1996), but that case is distinguishable on its facts. In Evans, drug suspects, one of who threw a bag out a window on the officers' approach, were also seen placing small items in their mouths and passing a jug back and forth, suggesting the hiding (by ingestion) of evidence. The pursuing officers activated their sirens and wig-wag lights. Speeds did not exceed 50 MPH. Id., at 1035.

Focusing largely on the speed of the pursuit, the First Circuit held:

> The vehicles' speeds never exceeded 50 m.p.h. The officers had good cause to believe that the suspects were trafficking in cocaine…. Considering the totality of the circumstances, we do not believe that either the officers' decision to pursue the apparent perpetrators of a serious offense or their actions during the chase were so raw as to shock the conscience of a reasonable factfinder.
>
> Evans, at 100 F.3d 1038.

In this case, by marked contrast, there were no such observations of highly suggestive activity, no sirens, no lights (Exhibit 1; pg. 53), no use of the police vehicle's horn (Exhibit 1; pg. 48), and a higher rate of speed (Exhibit 2; pg. 8)..

Defendant-Finneral also relies upon <u>Boveri v. Town of Saugus</u>, 113 F.3d 4, 5 (1st Cir. 1997). In that case, there was no suggestion that the officers intended to cause harm or to increase the suspect's legal plight. Yet the First Circuit held that the case, "tests the margins of the 'shock the conscience' standard." <u>Id.</u>, at 113 F.3d 5.

In <u>Boveri</u>, the police officers used their blue lights and siren, the chase took place on the six-to-eight lane Route 128, and speeds reached 80 MPH. The officers followed, activating their siren and blue lights, and the officers remained "a few car lengths" behind the suspect's vehicle. <u>Id.</u>, at 113 F.3d 5-6. The First Circuit also found that the officers "were justifiably concerned that the driver was under the influence of alcohol." <u>Id.</u>, at 6.

Under those circumstances, the First Circuit affirmed summary judgment for the defendant officers. Those facts are clearly distinguishable from the case at bar.

First Circuit precedent does not, when view in its factual context, assist Defendant-Finneral.

<u>MATERIAL FACTS IN DISPUTE</u>

There are material facts in dispute. Not the least among them is how fast Officer Finneral was driving. He claims he was going 50 MPH. (Defendant's Statement of Facts, # 18.) But Joyce Powers testified that he was going "at least seventy miles per hour" in pursuit of Zazzara. (Exhibit Exhibit 2; Trial Transcript, May 27, 2003, pg. 8.)

Officer Finneral claims he kept a reasonably safe distance between vehicles (about 200 to 300 feet) (Exhibit 1; pg. 67), but Powers testified that the cars were "bumper to bumper." (Exhibit 2, pg. 9.)

Officer Finneral claims that he slowed for the stop signs, but Witness Powers stated that "just flew out and just kept going." (Exhibit 2; pg. 9) and that the "second car" (which would have been Finneral's) "didn't stop at the stop sign." (Exhibit 2; pg. 13.)

In short, Defendant-Finneral's description of the chase is considerably more benign than the chase observed and described by Witness Powers. These are plainly material facts in the context of a high-speed pursuit.

## 1.  Did Finneral Intend to Cause Injury or Worsen Zazarra's Plight?

Defendant-Finneral argues that, In Lewis, "The Supreme Court further noted that … 'we hold that high-speed chases with no intent to harm suspects physically or worsen their legal plight do not give rise to liability'" under Section 1983. (Defendant's Brief, pg. 5.)

The evidence against Zazarra at the time Finneral instigated the pursuit was weak. Defendant-Finneral was *not* conducting a drug surveillance on the day in question. (Exhibit 1; pg. 22.) No drugs or contraband were found on Zazarra or in his car. (Exhibit 1; pg. 77.)

The criminal charges against Zazarra stemmed solely from the high-speed chase. On this evidence, a jury might reasonably find that Finneral's actions were intended to worsen Zazarra's legal position. This would allow the Section 1983 claim to proceed, even on the Defendant's version of the law.

Whether Defendant-Finneral intended such an outcome should not be the subject of summary judgment. It is well-established that Issues of motive and intent are particularly within

7

the realm of a jury's responsibility, and hence disfavoring the granting of summary judgment. See, Poller v. Columbia Broadcasting System, 368 U.S. 464, 473 (1982); Pulman Standard v. Swent, 456 U.S. 273, 287 1982).

## THE NEGLIGENCE AND WRONGFUL DEATH CLAIMS

The plaintiff agrees that the negligence and wrongful death claims are properly brought against the City and not against Officer Finneral is his personal capacity.

## RELIEF REQUESTED

WHEREFORE, the plaintiff requests that the defendant's motion for summary judgment be denied, and that the state torts claims proceed against the City pursuant to Chapter 258.

Respectfully Submitted,

/s/ Daniel S. Sharp_____
Daniel S. Sharp (BBO 565524)
Attorney for Plaintiff
196 Atlantic Avenue
Marblehead, MA  01945
781-639-1862

## CERTIFICATE OF SERVICE

The undersigned certifies that he/she caused a true copy of the document above to served by ECF upon on all counsel of record.

/s/ Daniel S. Sharp_____