UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMY ANAGNOS and THE ESTATE OF THEODORE ANAGNOS, DECEASED,<br>　　Plaintiffs<br><br>V.<br><br>THOMAS HULTGREN, in his official and personal capacities, CHRISTOPHER FINNERAL, in his personal and official capacities, OFFICER JOHN DOE, in his personal and official capacities, and THE CITY OF LOWELL, MASSACHUSETTS<br>　　Defendants | C.A. NO. 04-11664-JLT |

**DEFENDANT CITY OF LOWELL'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Now comes the Defendant, City of Lowell ("City"), and requests that this Honorable Court enter judgment for the City in the above-captioned matter pursuant to Fed.R.Civ.P. 56. As grounds therefor, and more fully explained below, no genuine issues of material fact exist, and the City is entitled to judgment as a matter of law.

**II.   FACTS**

Pursuant to Local Rule 56.1, the City has submitted a separate document titled "Defendant City of Lowell's Statement of Undisputed Facts in Support of Its Motion for Summary Judgment" which contains all facts relevant to the City's motion.

**III.   STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). When a motion for summary judgment is made and supported under Rule 56 of the Federal Rules of Civil Procedure, an adverse party may not rest upon the mere allegations of his pleading, but the adverse party's response must set forth specific, supported facts showing that there is a genuine issue for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (U.S. 1986) (*quoting,* Fed. Rule Civ. Proc. 56(e)).

The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587 (U.S. 1986) (*quoting*, Advisory Committee Note to 1963 Amendment of Fed. Rule Civ. Proc. 56(e), 28 U. S. C. App., p. 626). "A party opposing a motion for summary judgment 'must set forth specific facts showing that there is a genuine issue for trial.'" <u>Marrero-Garcia v. Irizarry</u>, 33 F.3d 117, 119 (1st Cir. 1994)(*quoting*, Fed. R. Civ. P. 56(e); <u>Mack v. Great Atlantic & Pacific Tea Co.</u>, 871 F.2d 179, 181 (1st Cir. 1989)).

Allegations of a factual dispute cannot defeat an otherwise properly supported motion for summary judgment because the relevant issue is whether a genuine issue of material fact exists. <u>MacGlashing v. Dunlop Equip. Co.</u>, 89 F.3d 932, 936 (1st Cir. 1996)(*quoting*, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)). "Material facts are those that have the potential to affect the outcome of a suit." <u>Id.</u>

**IV.   ARGUMENT**

    **A.   <u>Civil Rights</u>**

> **The Plaintiffs cannot prove any set of facts entitling them to relief under 42 U.S.C. § 1983, so the City is entitled to judgment as a matter of law for Count V of the Complaint.**

For the reasons set forth in Defendant Christopher Finneral's ("Finneral") Motion for Summary Judgment, the Plaintiffs are not able prove any set of facts upon which Finneral may

be liable to the Plaintiffs under § 1983. The Plaintiffs, therefore, cannot recover from the City under § 1983. See Evans v. Avery, 100 F.3d 1033, 1040 (1st Cir. 1996)(holding that a municipality cannot be liable for failure to train under § 1983 absent an underlying constitutional violation by one of its police officers). Since the Plaintiffs cannot show that Finneral violated the Plaintiffs' constitutional rights, the Court should enter judgment in favor of the City of Lowell for Count V of the Plaintiffs' Complaint.

    B.    **Negligence**

For the reasons set forth below, the Plaintiffs are not able prove any set of facts upon which the City may be liable for the Plaintiffs' claims of negligence. The Court should therefore enter judgment in favor of the City of Lowell for Counts I, II, III and IV of the Plaintiffs' Complaint.

    1.    **Negligent Hiring**

The Plaintiffs' claim for negligent hiring under the Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, must fail because the City's acts of hiring Officers Thomas Hultgren ("Hultgren") and Finneral were discretionary functions. Under the MTCA, municipalities are liable for injuries or death caused by the negligent acts of their public employees acting within the scope of their employment. M.G.L. c. 258, § 2. Municipalities are not, however, liable for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." M.G.L. c. 258, § 10(b).

The First Circuit has determined that the hiring of police officers in Massachusetts is a discretionary function, and the City is therefore immune from liability for claims of negligently

hiring police officers. Crete v. City of Lowell, 418 F.3d. 54, 60-65 (2005). Since the actions of hiring Officers Hultgren and Finneral were discretionary functions, the City is immune from liability for such actions and the Court should accordingly enter judgment in the City's favor for the negligent hiring claim in Count IV.

Further, the Plaintiffs lack any evidence that the City negligently hired the officers. Moreover, the Plaintiffs cannot present any evidence showing that any act of negligence in the hiring process caused the Plaintiffs any injury. Therefore, in addition to the City's immunity, the Court should enter judgment for the City as to the Plaintiffs' hiring claim because the Plaintiffs cannot prove any set of facts to support her argument.

### 2.     Negligent Retention and Training

The Court should enter judgment in the City's favor for the Plaintiffs' claims for negligent training and supervision in Count IV, because the City is immune from liability for such claims. The MTCA specifically exempts public employers from liability for claims based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation. M.G.L. c. 258, § 10(j). Claims of negligent retention and training are claims based on the failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance and thus are barred by M.G.L. c. 258, § 10(j). See Ward v. City of Boston, 367 F. Supp. 2d. 7, 16 (2005).

Additionally, even if the City did not enjoy immunity for these claims, it is not enough for the Plaintiffs to show deficiencies in a training program. A causal relationship between any breach of duty and the harm suffered by the Plaintiffs is an essential element of the Plaintiffs' claim. See Nelson v. Salem State College, 2006 Mass. LEXIS 118 , p. 27 (2006) citing Jean W. v. Commonwealth, 414 Mass. 496, 511 (1993) (Liacos, C.J., concurring). The Plaintiffs lack any

evidence showing that the City of Lowell negligently retained and/or trained the relevant officers, and that any such negligence caused Mr. Anagnos' death. The Court should therefore enter judgment for the City for the Plaintiffs' claims of negligent retention and training in Count IV of the Plaintiffs' complaint, because (1) the City is immune from liability for such actions, and (2) the Plaintiffs simply lack evidence to show that the alleged negligent training and retention caused the Plaintiffs' alleged injuries or damages.

### 3.    Claims That the Officers Acted Negligently

Under state law, public employers are liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment. M.G.L. c. 258, § 2. The Plaintiffs' claims in Count III that the officers acted negligently, to the extent Plaintiffs allege that the officers acted within the scope of their employment, are therefore claims against the City. For the reasons set forth below, the Plaintiffs cannot prove that Officers Hultgren and Finneral were negligent, nor that any negligence of such officers caused the Plaintiffs' injury.

#### *a.    Original Cause/Tortious Act of Third Party*

The City is immune from liability for the claim that the City's employees, Officers Hultgren and Finneral, acted negligently because the evidence shows that their actions were clearly not the "original cause" of the accident resulting in the decedent's death. The City is not subject to liability under the MTCA for "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not *originally caused* by the public employer or any other person acting on behalf of the public employer." M.G.L. c. 258, § 10(j). The Supreme Judicial Court has construed the "original cause" language to mean an affirmative act by a public

employer that creates the "condition or situation" that results in harm inflicted by a third party. Kent v. Commonwealth, 437 Mass. 312, 318 (2002), citing Brum v. Town of Dartmouth, 428 Mass. 684, 695 (1999).

Here, the City is immune from liability pursuant to M.G.L. c. 258, § 10(j) because no act or omission by a City employee was the original cause of the decedent's death. Clearly, the decedent's death was the harmful consequence of the tortious conduct of a third party, Thomas Zazzara. Thomas Zazzara failed to obey a lawful command of a police officer. Officer Thomas Hultgren, who wore a visible badge, advised Zazzara that he was a police officer and ordered Zazzara to stop on a number of occasions. Zazzara instead defied the lawful command of a police officer and fled the scene of a crime. Thereafter, Zazzara violated the Commonwealth of Massachusetts' traffic rules by traveling above the speed limit, and by failing to observe stop signs. Therefore, even if the City's employees had acted negligently – which the City denies – the acts of Zazzara disobeying a lawful police order, fleeing the crime scene, and committing several traffic violations, were the original cause of the decedent's death because Zazzara was driving carelessly and/or recklessly at a high rate of speed.

In addition, Zazzara provided a statement to the police, during which he informed the police that the decedent, Theodore Anagnos, ran into the road. Clearly, Zazzara's negligent driving, and the decedent's negligent act of running into a road with traffic, show that the City is immune from liability because the acts of the City were clearly not the original cause of Theodore Anagnos' death.

No further argument should be necessary in this motion because the section 10 exclusions are disjunctive. "'The immunities provided by [G. L. c.258,] § 10 operate in the alternative; even

if one immunity contains an exception that would permit a claim to be brought, that claim is barred if any of the other immunities apply.'" Ku at 276 citing Brum at 697.

### b.    *Proximate Cause*

The Plaintiffs cannot prove that any action of the City proximately caused the decedent's death because Zazzara's negligence and/or recklessness caused decedent's death. One cannot be held liable for negligent conduct unless it is causally related to the Plaintiffs' injury, and causation is therefore an essential element of the Plaintiffs' burden of proof of negligence. Kent at 320. In addition to being the cause in fact of the injury, the Plaintiffs must show that the negligent conduct was a proximate or legal cause of the injury. See Wallace v. Ludwig, 292 Mass. 251, 254 (1935). "Proximate cause is that which in a continuous sequence, unbroken by any new cause, produces an event and without which the event would not have occurred. It may be assisted or accelerated by other incidental and ancillary matters, but, if it continues as an operative and potent factor, the chain of causation is not broken." Id. Proximate cause may be determined as a question of law when there is no dispute as to the effect of the facts established. Stamas v. Fanning, 345 Mass. 73, 76 (1962).

The evidence clearly shows that the actions of Zazzara, rather than the City, proximately caused the decedent's death. Zazzara disobeyed a lawful command of a police officer, fled a crime scene, operated his vehicle recklessly at a high rate of speed, and disobeyed traffic rules, ultimately hitting and killing Theodore Anagnos. Zazzara's actions, having no relation to any alleged negligence of the City, therefore clearly broke any potential chain of causation.

Theodore Anagnos' actions also broke any potential chain of causation. He ran into traffic. Zazzara's negligence, along with Theodore Anagnos' negligence therefore clearly broke the chain of causation.

Whether negligent conduct is the proximate cause of an injury depends not on factual causation, but rather on whether the injury to the Plaintiffs was a foreseeable result of the defendant's negligent conduct. Jesionek v. Massachusetts Port Auth., 376 Mass. 101, 105 (1978). Proximate cause therefore prevents liability from being based on factual causation alone. Poskus v. Lombardo's of Randolph, Inc., 423 Mass. 637, 640 (1996). If a series of events occur between the negligent conduct and the ultimate harm, the Court must determine whether those intervening events have broken the chain of factual causation or, if not, have otherwise extinguished the element of proximate cause and become a superceding cause of the harm. Jesionek v. Massachusetts Port Auth., supra.

Again, assuming that the Plaintiffs could prove that the City breached a duty, no evidence exists showing that the injury was the foreseeable result of the City's conduct. No fact or circumstance exists on which the Plaintiffs may prove that Zazzara's reckless driving, defiance of a police officer and lawful rules of the road were actions the City should have foreseen. Zazzara's actions are therefore a superceding cause of the decedent's harm.  Further, the City had no reason to foresee that a pedestrian jogger would run into the road, jogging into traffic. The Plaintiffs therefore lacks any evidence on which she can prove that the City proximately caused the decedent's death because this accident was not foreseeable.

For the foregoing reasons, the Court should enter judgment in favor of the City for Counts I and III.

    *c.*  *Count III for Negligent Infliction of Emotional Distress*

      *i.*  ***The Plaintiff, Amy Anagnos cannot prove that any action of the City caused the untimely end of her relationship with her spouse.***

The Plaintiff, Amy Anagnos cannot prove that any action of the City caused the "untimely end of her relationship with her spouse," because on the date of Theodore Anagnos' death, July 31, 2001, the couple had already separated, were involved in divorce proceedings, and clearly did not have a positive relationship. Amy Anagnos began counseling sessions in November 2000, almost 9 months prior to the accident that resulted in Theodore Anagnos' death. Her counselor's notes from her initial interview in November 2000 note that she was having marital problems, was living apart from her spouse and had seen a lawyer. Her counselor's notes indicate that she was involved in an extremely unhappy and abusive marriage.

In November 2000, Amy Anagnos filed for divorce against Theodore Anagnos in the Middlesex County Probate and Family Court. In April 2001, both Amy and Theodore attended court proceedings for the divorce.

In June 2001, Amy called the police because Ted was stalking her. On July 18, 2001, a couple of weeks before Ted's death, Ted cut Amy off of his insurance. Amy was very angry with Ted and confronted him at his place of employment. Her counselor's notes state that she was mad, sad, angry and scared at that time, less than two weeks prior to Ted's death.

The evidence clearly shows that Amy Anagnos' relationship with her spouse had clearly ended well before Theodore Anagnos' death. The Court should therefore enter judgment in favor of the City on the Plaintiff's claim in Count III, that "as a proximate cause of the defendants' negligence, Plaintiff Amy Anagnos suffered the untimely end of her relationship with her

spouse, with the corresponding loss of his . . . services, protection, care . . . society, companionship, comfort, guidance, counsel and advice."

> ii.   **The Plaintiffs cannot prove the elements of negligent inflictionof emotional distress**

For the Plaintiff, Amy Anagnos' claim for negligent infliction of emotional distress, she must prove: (1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; (5) that a reasonable person would have suffered emotional distress under the circumstances of the case. Rodriguez v. Cambridge Hous. Auth., 443 Mass. 697 , 701 (2005). The Plaintiff must also corroborate her alleged mental distress claims with enough objective evidence of harm to convince a judge that their claims were likely genuine. Id. at 702.

The evidence shows that factors unrelated to the City and its employees caused Amy (Skryness)(Anagnos) Barnes' distress. The evidence shows that her distress did not result from any act of the City or its employees, but rather resulted from pre-existing conditions, factors and situations.

Amy's counselor's records note that her problems with anxiety date back to childhood. She had separation anxiety until about the 6th grade. She cried about going to school, and would experience stomach aches and other symptoms. She did not live away from home during college, then lived in her parents' house after she married Theodore. The only time that she lived on her own was when she and Ted separated. It made her anxious to be away from her family.

Amy began counseling sessions in November 2000, almost 9 months prior to the accident which resulted in Theodore Anagnos' death. The notes from her intake interview note that she was having marital problems, was living apart from her spouse and had seen a lawyer. The counselor noted that Ted fought with Amy's parents and sister, he holds grudges and is verbally

and emotionally abusive. The counselor noted that Ted "puts himself first," "talks down to" Amy, is loud and aggressive, called Amy "stupid/dumb/bitch/the c word."

At the time she began her counseling sessions in November 2000, Amy's doctor had prescribed medication for sleep. She had a horrible appetite and had lost weight. She had trouble concentrating at home, was anxious, irritable and experienced crying spells.

In November 2000, she also started taking Prozac for depression. She was diagnosed with major depression with anxiety.

During the course of her counseling sessions in November 2000, Amy experienced crying spells, loss of appetite and sleeplessness. She was diagnosed with Post Traumatic Stress Disorder. Her counselor noted that her anxiety was connected to self-doubt.

Her counselor's records show that Amy had remained in an abusive relationship with Ted even before she married him.

In the fall of 2000, Amy filed for divorce against Theodore. In March 2001, her counselor noted that Amy received a notice for an April court date. At that time, she thought about Ted's abuse and got scared, angry and sad. She was concerned that she would be depressed if she is alone. Her counselor's records clearly show that she was afraid of Ted, and was afraid of seeing him.

After seeing Ted at the courthouse in April 2001, Amy was frightened and sad. She was frustrated by what he did to her.

In May 2001, she experienced great depression and frustration. She felt like she wasted a large part of her life that she cannot get back. At the age of 30, she felt as though she lost the years when she was supposed to meet someone. She was mad at herself for marrying Ted for all

the wrong reasons. She was experiencing Post Traumatic Stress Disorder-like symptoms and was depressed. Amy indicated that she was willing to see a psychiatrist for her symptoms.

Amy showed signs of stress and depression in June 2001. She was upset that she was not moving forward in life with marriage, kids and the house. That month, Amy called the police because Ted was stalking her.

On July 18, 2001, a couple of weeks before Ted's death, Ted cut Amy off of his insurance. Amy was very angry with Ted and confronted him at his place of employment. Her counselor's notes state that she was mad, sad, angry and scared. The ties of Amy to her soon-to-be ex-husband showed that she was not sufficiently close to Theodore Anagnos to have an emotional relationship with him at the time of the accident on July 31, 2001.

On August 28, 2001, after Ted's death, her counselor noted that she had experienced panic attacks throughout the marriage. The records show that Theodore Anagnos' abuse of Amy, and not his death nor any action of the City, have caused Amy's anxiety and depression.

Amy's counselor's records note that she is immature. Her counselor also questioned "How much is connected to Ted's death". Ex. 9, 11/27/02.

Based upon the foregoing, the Plaintiffs cannot show that any act of the City caused Amy's alleged distress. Her history of emotional issues dates back to her childhood, but moreover the evidence shows that the decedent caused her distress. The Court should therefore enter judgment for the City on Count III of the Plaintiffs' Complaint.

### 5. The Plaintiffs Cannot Prove Conscious Pain and Suffering

The Court should enter judgment in favor of the City for the Plaintiffs' claim for conscious pain and suffering in Counts II and III, and negligent infliction of emotional distress to Theodore Anagnos in Count III of the Complaint because the Plaintiffs cannot prove that the

decedent consciously suffered. Conscious suffering must be demonstrated by cognizable proof beyond mere surmise. See Baldassare v. Crown Furniture Co., 349 Mass. 183, 195 (1965). No evidence exists showing that the decedent consciously suffered.

Nothing in the medical records establishes that the decedent was conscious after the accident, or that he suffered while conscious. To the contrary, as identified in the City's Statement of Undisputed Facts, all the medical records from the Emergency Medical Services providers, the Advanced Life Support Provider and the hospital indicate that Theodore Anagnos was unconscious and unresponsive. In addition, the Plaintiffs have not identified any expert who would testify as to any alleged conscious pain and suffering. Without such evidence, the Plaintiffs' claim for conscious pain and suffering must fail because no evidence exists on which a jury could determine that the decedent consciously suffered. Further, since no evidence exists showing that Theodore Anagnos was conscious and suffered distress after the accident, the Plaintiffs cannot prove their claim of negligent infliction of emotional distress as to Theodore Anagnos. The Court should therefore enter judgment for the City as to Counts II and III of the Complaint.

### 6.     Call For Medical Assistance.

The Plaintiffs allege in Count II, ¶¶ 37 and 38 that the Defendants did not immediately call for medical assistance for Mr. Anagnos, and that the Defendants unreasonably delayed in providing or obtaining assistance to Mr. Anagnos. The City is immune from this claim because M.G.L. § 10(j) bars any claim against the City based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.  Since the claim of failure to immediately call for

medical assistance alleges a claim based upon failure to act to prevent or diminish the harmful consequences of a condition or situation, not originally caused by the City, the City is immune from this claim.

Further, the Plaintiffs have no evidence showing that the City had a duty to immediately call for medical assistance.

Moreover, the Plaintiffs cannot prove any set of facts showing that the City did not immediately call for medical assistance. First, Finneral immediately requested medical assistance and the City's dispatcher contacted Trinity EMS. The times on the City's dispatch records and Trinity's records show that ambulances were immediately dispatched to the scene. Second, nothing in the medical records indicates that a delay in providing medical assistance caused either his injuries or any conscious pain and suffering. The Court should therefore enter judgment in favor of the City for the Plaintiffs' claim that the City did not immediately call for medical assistance, because the Plaintiffs cannot prove this claim as a matter of fact or law.

### 7.    Standing

The Plaintiffs lack standing to pursue a wrongful death action against the City. Actions for wrongful death against a municipality must be brought by the executor or administrator of the decedent, on behalf of the designated categories of beneficiaries. See <u>Hallett v. Wrentham</u>, 398 Mass. 550, 553-554 (1986) citing <u>Gaudette v. Webb</u>, 362 Mass. 60, 71 (1972) and M.G.L. c. 229, § 2. The Plaintiffs in this case are Amy Anagnos, named as an individual,[1] and the Estate of Theodore Anagnos. Neither Plaintiff filed their lawsuit claims as the Executor or Administrator of the Estate of Theodore Anagnos. Since only the Executor or Administrator has

---

[1] The Defendant deposed Amy Anagnos, now known as Amy Barnes. Mrs. Barnes advised the Defendant that she is the executrix of the Estate of Theodore Anagnos. She did not, however, file her complaint in her capacity as an executrix.

standing to bring a suit for wrongful death, the Court should enter judgment in favor of the Defendant, City of Lowell, for Count I, the Plaintiffs' claim for wrongful death.

## V. CONCLUSION

For the foregoing reasons, the Defendant City of Lowell respectfully requests that this Honorable Court enter judgment in its favor.

May 22, 2006                                                           **CITY OF LOWELL, DEFENDANT**

/s Kimberley A. McMahon
Kimberley A. McMahon, Assistant City Solicitor
BBO # 641398
City of Lowell Law Department
375 Merrimack Street, 3rd Fl.
Lowell MA 01852-5909
(978) 970-4050
FAX (978) 453-1510