IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF MASSACHUSETTS

AMY ANAGNOS and THE ESTATE OF
THEODORE ANAGNOS,

       Plaintiffs,

v                                                Case No: 04-11664-JLT

THOMAS HULTGREN, in his official
and personal capacities,
CHRISTOPHER FINNERAL, in his personal
and official capacities,
OFFICER JOHN DOE, in his personal
and official capacities, and
THE CITY OF LOWELL, MASSACHUSETTS,

       Defendants.

---------------------------------

| | |
|---|---|
| ROLAND L. MILLIARD | DANIEL S. SHARP, PC |
| Counsel for plaintiffs | Co-counsel for plaintiffs |
| 1470 Lakeview Avenue, Unit 5 | 48 Locust Street |
| Dracut, MA  01826 | Marblehead, MA  01945 |
| 978-957-6799 | 781-639-1862 |
| | |
| ATTORNEY KIMBERLY McMAHON | ATTORNEY THOMAS FREDA |
| City Solicitor | Attorney for Defendant-Officers |
| City Hall, Law Department | 43 Thorndike |
| 375 Merrimack Street, RM. 51 | Cambridge, MA  02141 |
| Lowell, MA  01852-5986 | 617-494-1188 |
| 978-970-4050 | |

PLAINTIFF'S COUNTER-STATEMENT OF
UNDISPUTED FACTS
ON DEFENDANT-CITY'S MOTION FOR SUMMARY JUDGMENT

The plaintiff files the following responses and additional facts concerning the Defendant-City's "undisputed facts."

## GENERAL OBJECTIONS AND
## MOTION TO STRIKE

The plaintiff submits a general objection to the City's "undisputed facts" because the vast majority of the "undisputed facts" have no bearing on the motion for summary judgment as they are primarily dedicated to peripheral facts such as damages.

The "undisputed facts" are clearly intended to unfairly prejudice the Court against the plaintiff and the decedent.  (See, i.e. #33, "Ted did not want the baby and Amy had to have an abortion.")  In fact, allegations #22 through #53 are not material to the motion at hand because they encompass issues that are jury questions under any view of the law.

The "undisputed facts," because most of them have no bearing on liability, do not comport with the requirements of Local Rule 56.1 ("Motions for summary judgment shall include a *concise* statement of *the material facts*….") (Emphasis added.)  Since most of the facts alleged by the City are not *"material,"* the plaintiff submits that the facts should be stricken in their entirety and the motion summarily denied.

Any agreement by the Plaintiff with any facts stated by the Defendant-City are for the purposes of summary judgment, only, and are not judicial admissions.

## RESPONSES TO ALLEGED FACTS

1. Denied as the allegation is not supported by the referenced record.  There is no mention of a CVS Pharmacy.   Plaintiff does not dispute that Defendant-Finneral was on duty.

2. Agreed.

3. Agreed.

4. Agreed.

5. Agreed.

6. Agreed.

7. Agreed.

8. Agreed.

9. Agreed.

10. Agreed.

11. Agreed.

12. Denied inasmuch as there was no "parking lot." The balance of the allegations are admitted.

13. Agreed.

14. Denied. Finneral, himself, testified that the Mercedes was going 70 MPH on Willard Street. (Exhibit 1; Finneral DT, pg. 43.)

15. Agreed.

16. Agreed.

17. Agreed.

18. Agreed.

19. Agreed.

20. Agreed.

21.    Denied. Mr. Zazarra made statements that create material issues of fact, support the plaintiffs' case, and were statements against penal or pecuniary interest. (See, Plaintiff's Further Facts, paras. 15 – 18, below.)[1]

22.    Agreed.

23.    Agreed.

24.    Agreed.

25.    Agreed.

26.    Agreed.

27.    Agreed.

28.    Agreed.

29.    Agreed.

30.    Agreed.

31.    Agreed.

32.    Agreed.

33.    Agreed.

34.    Agreed.

35.    Agreed.

36.    Agreed.

37.    Agreed.

---

[1] At the July 12th mediation of this case, the plaintiffs learned for the first time that Zazarra made tape-recorded statements. Those statements are relevant, discoverable, and were never turned over by the Defendant-City in mandatory, initial disclosures, or otherwise.

38. Agreed.

39. Agreed.

40. Agreed.

41. Agreed.

42. Agreed.

43. Agreed.

44. Agreed.

45. Agreed.

46. Agreed.

47. Agreed.

48. Agreed.

49. Agreed.

50. Agreed.

51. Agreed.

52. Agreed.

53. Agreed, but see #21 and fn1. Zazarra made statements that support the plaintiff's case and create material issues of fact.

PLAINTIFF'S STATEMENT OF FURTHER
FACTS IN OPPOSITION TO DEFENDANT-CITY'S
MOTION FOR SUMMARY JUDGMENT

1. With respect to the alleged drug transaction between the Toyota and the Mercedes, Officer Finneral refused to answer the question whether he actually saw something being transferred from one person's hand to another's. (See, Exhibit 1; Finneral DT, pg. 27.) Contrary

to one portion of his testimony, Officer Finneral testified he <u>believed</u> a transaction took place (Exhibit 1; pg. 27, lines 7 – 23), while refusing to state how that belief came about.  As the defendant contradicts his own testimony on whether a transaction actually did occur, the allegation is **not** an undisputed fact.

2.    A disinterested witness, Joyce Powers, testified under oath (Exhibit 2; pg. 5, line 7) at the criminal trial of <u>Commonwealth v. Thomas Zazzara</u>, Middlesex Superior Court No: 2002-1379-001-003.

3.    Ms. Powers testified that Defendant-Finneral's car was driven "at least seventy miles per hour" in pursuit of Zazzara. (Exhibit 2; Trial Transcript, May 27, 2003, pg. 8.)

4.    Ms. Powers testified that the Zazarra and Finneral vehicles were "bumper to bumper" and that they "just flew out and just kept going." (Exhibit 2; pg. 9.)  By contrast, Defendant-Finneral testified that he was "two or three hundred feet behind [Zazarra]." (Exhibit 1; pg. 66.)

5.    Ms. Powers testified that, "I stopped because I thought they were crazy." (<u>See</u>, Exhibit 2; pg. 9.)

6.    Ms. Powers testified that the "second car" (which would have been Finneral's) "didn't stop at the stop sign." (Exhibit 2; pg. 13.)

7.    Ms. Powers testified:

> No.  The first one come out and the other one was bumper to bumper, like here comes one and her comes the other one, together…. And then the other one was on the bumper." (Exhibit 2; pg. 12.)

8.    Defendant-Finneral never attempted to blow his horn to alert other drivers or pedestrians to the high-speed chase that was in progress. (Plaintiff's Exhibit 1; Finneral DT, pg. 48.)

9. The car Defendant-Finneral was driving had no flashing lights, no siren, no grill lights, and no police radio (Exhibit 1; pp. 44 – 45) and no strobe light (Id., pp. 48- 49 and 51 – 52.)

10. Defendant-Finneral was *not* conducting drug surveillance on the day in question. (See, Exhibit 1; pg. 22.)

11. Unmarked cars with sirens and flashing grill lights were available to the officers on the day in question. (Exhibit 1; pg. 53.)

12. Defendant-Finneral did *not* stop for either of two stop signs. (Exhibit 1; pg. 63.)

13. Defendant-Finneral testified that he would expect to see pedestrians on the streets where the pursuit occurred. (Exhibit 1; pg. 66.)

14. No drugs were found on Mr. Zazarra. (Exhibit 1; pg. 77.)

15. Zazarra made a statement against interest that he thought the smooth car was "either a robbery or the police." "Didn't know, didn't want to take a chance at that time." (Exhibit 3, pg. R.19.)

16. When Zazarra asked whether he knew Hultgren and Finneral were police officers, he stated, "Dead up. [I] thought they were fucking heisters. I thought they were going to ice [kill] me." (Exhibit 3, pg. R.36.)

17. Further on the question of whether he realized that Hultgren and Finneral were police officers, Zazarra said, "When I saw the gun, fuck it, if he's going to shoot me, he's going to shoot me. *I don't know who it is*." (Exhibit 3, pg. R.41.) (Emphasis added.)

18. Zazarra also testified that, "Nobody ever told me he had a badge, nobody said, stop-police, nobody said squat to me like that. All I heard was, slow that fucking car down, and there was a barrel of a gun pointed at me." (Exhibit 3, pg. R.42.)

19.	When the officers pulled up behind Finneral and Hultgren, they were about 200 feet away from the supposed drug transaction. (Exhibit 1, pg. 36.)

20.	Amy Anagnos had a relationship with her husband prior to his death. She hoped for reconciliation. (Exhibit 4; Amy Anagnos (Barnes) deposition, pg. 32) ("We were together for 10 years…. I wanted to do whatever I could to salvage the marriage.")

21.	Amy Anagnos hoped that filing for divorce would awaken in Theodore Anagnos a realization that he needed to change. (Exhibit 4, pg. 32.) Amy Anagnos testified that "I loved him a lot." Id.

22.	Amy Anagnos testified that she had regular conversations with Mr. Anagnos after she filed for divorce. (Exhibit 4; Amy Anagnos (Barnes) Deposition, pg. 34.) She testified that she considered whether to return to work or take some time off (Id. pg. 35), and that she "ended up not being able to get out of bed a lot in the morning." Id.

23.	Joyce Powers testified that, after the accident, Mr. Anagnos let out a cry of agony when he heard the siren of the approaching ambulance. (Exhibit 5; Deposition of Joyce Powers, pg. 11) ("And when he heard that ambulance, he made one loud groan or growl, like, he knew it was

coming.")  (Id., pg. 13) ("[T]he minute he heards that ambulance come, he gave his last hurrah and that was it.  He gave me a little hope.")

Respectfully Submitted,

/s/ Daniel S. Sharp\
Daniel S. Sharp (BBO 565524)\
Attorney for Plaintiff\
196 Atlantic Avenue\
Marblehead, MA  01945\
781-639-1862

CERTIFICATE OF SERVICE

The undersigned certifies that he/she caused a true copy of the document above to served by ECF upon on all counsel of record on July 17, 2006

/s/ Daniel S. Sharp

Respectfully Submitted,

/s/ Daniel S. Sharp\
Daniel S. Sharp (BBO 565524)\
Attorney for Plaintiff\
196 Atlantic Avenue\
Marblehead, MA  01945\
781-639-1862

CERTIFICATE OF SERVICE

The undersigned certifies that he/she caused a true copy of the document above to served by ECF upon on all counsel of record on July 13, 2006

/s/ Daniel S. Sharp