IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF MASSACHUSETTS


AMY ANAGNOS and THE ESTATE OF
THEODORE ANAGNOS,

      Plaintiffs,

v                                                                          Case No: 04-11664-JLT

THOMAS HULTGREN, in his official
and personal capacities,
CHRISTOPHER FINNERAL, in his personal
and official capacities,
OFFICER JOHN DOE, in his personal
and official capacities, and
THE CITY OF LOWELL, MASSACHUSETTS,

      Defendants.

---------------------------------

| | |
|---|---|
| ROLAND L. MILLIARD | DANIEL S. SHARP, PC |
| Counsel for plaintiffs | Co-counsel for plaintiffs |
| 1470 Lakeview Avenue, Unit 5 | 48 Locust Street |
| Dracut, MA  01826 | Marblehead, MA  01945 |
| 978-957-6799 | 781-639-1862 |
| | |
| ATTORNEY KIMBERLY McMAHON | ATTORNEY THOMAS FREDA |
| City Solicitor | Attorney for Defendant-Officers |
| City Hall, Law Department | 43 Thorndike |
| 375 Merrimack Street, RM. 51 | Cambridge, MA  02141 |
| Lowell, MA  01852-5986 | 617-494-1188 |
| 978-970-4050 | |

_____


PLAINTIFF'S OPPOSITION TO
DEFENDANT-CITY'S MOTION FOR SUMMARY JUDGMENT


      The plaintiff files the following opposition to the Defendant-City's Motion for Summary

Judgment.  For ease of reading, the Plaintiff's brief tracks the issues and format established by

the Defendant-City's brief. The fact that the Plaintiffs repeat the language of the City's headings is not intended to concede the legal or factual accuracy of those headings.

    A.    <u>Civil Rights</u>

As to this argument, the Plaintiff adopts the brief and exhibits submitted in opposition to the Motion for Summary Judgment filed by Defendant-Finneral. On the specific facts of this case, the defendants' authorities do not apply and the case should proceed to trial.

The plaintiff concedes that a Directed Verdict on this claim *could* eventually be required, depending upon how the testimony develops, but believes the claim should proceed to trial.

    B.    <u>Negligence</u>

        1.    Negligent Hiring

In light of discovery and recent developments in First Circuit law, the plaintiffs will withdraw their claims for negligent hiring.

        2.    Negligent Retention and Training

In light of discovery, the plaintiff will not pursue the negligent retention or negligent training claims.

        3.    Claims That the Officers Acted Negligently

            *a.*    *Original Cause/Tortious Act of Third Party*

The Defendant-City makes exactly the same arguments that were raised by a defendant-city and rejected by the U.S. District Court in <u>Ward v. City of Boston</u>, 367 F.Supp 2d 7 (U.S.D.C. Mass. 2005).

In that case, Boston police officers chased a vehicle the "wrong way" on I-93 with sirens blaring and lights flashing. The suspect being chased collided head-on with an innocent motorist who was killed.

The District Court rejected the "original cause" argument raised by the City for the same reasons it should be rejected here. Magistrate Judge Dein's opinion is quoted at length because her reasoning in Ward is so appropriate to this case. The court held:

> C. The City's Liability for Negligence
>
> In Count I of her Complaint, Ward has asserted a claim of negligence against the City pursuant to Mass. Gen. Laws ch. 258. The City has moved for summary judgment on the grounds that it is immune from liability under Mass. Gen. Laws ch. 258, § 10(j) because the Officers' conduct was not the "original cause" of the harm which befell Ward. This court concludes that in light of the affirmative conduct on the part of the Officers, the City is not immune and the motion for summary judgment as to Count I of the Complaint is denied.
>
> Mass. Gen. Laws ch. 258, § 10(j) provides that a public employee is immune from suit for:
>
>> any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer. (Emphasis added).
>
> Consequently, the City of Boston "is immune from suit under G.L. c. 258, § 10(j), for all harmful consequences arising from its failure to act to prevent the violent or tortious conduct of a third person, unless it originally caused' the condition or situation' that resulted in the harmful consequence." Kent v. Commonwealth, 437 Mass. 312, 317, 771 N.E.2d 770, 775 (2002)."
>
> The principal purpose of § 10(j) is to preclude liability . . . for failures to prevent or diminish harm." Jacome v. Commonwealth, 56 Mass. App. Ct. 486, 489, 778 N.E.2d 976, 979 (2002) (quoting Brum v. Dartmouth, 428 Mass. 684, 696, 704 N.E.2d 1147, 1155 (1999)). Consequently, to be an "original cause," there must be "an affirmative act (not a failure to act) by a public employer that creates the condition or situation that results in harm inflected by a third party." Kent, 437

Mass. at 318, 771 N.E.2d at 775. Moreover, "the act must have materially contributed to creating the specific condition or situation that resulted in the harm." Id. at 319, 771 N.E.2d at 775-76.

The City argues that the Officers did not create the condition or situation which resulted in Hicks driving the wrong way on I-93. City of Boston Memorandum (Docket No. 36) ("City Mem.") at 5. This court disagrees. Here, viewing the evidence in the light most favorable to the plaintiff, a jury could find that the Officers initiated a chase of Hicks without any reason. They continued to pursue him through crowded and twisting city streets with sirens blaring and lights flashing, despite a number of orders to call off the pursuit. The Officers also continued to chase Hicks despite his erratic driving and apparent disregard for traffic signals, until he finally ended up driving the wrong way on I-93. Given the fact that Hicks had previously driven through red lights and stop signs, it is possible for a jury to find it foreseeable that Hicks would turn down the nearest ramp, regardless of the direction of traffic.

* * * *

In order that a claim not be barred by § 10(j), the claim must involve something more than the pure failure to alleviate a private harm' and . . . to be successful a claimant must show 'some involvement of a public employee in creating the initial injury-causing scenario, not simply a failure to respond adequately after it arises.'" Armstrong v. Lamy, 938 F. Supp. 1018, 1043 (D. Mass. 1996) (quoting Joseph W. Glannon, Liability for "Public Duties" Under the Torts Claims Act: The Legislature Reconsiders the Public Duty Rule, 79 Mass. L. Rev. 17, 26 (1994)) (claim that City liable for negligently hiring teacher who sexually assaulted student not barred by § 10(j)). The affirmative conduct on the part of Officer Dambreville is sufficient to satisfy the "original cause" requirement of § 10(j), and, thus, the court cannot find on the record presently before it that the City is immune from liability. See, e.g., Bonnie W. v. Commonwealth, 419 Mass. 122, 126-27, 643 N.E.2d 424, 426-27 (1994) (while Commonwealth immune from suit based on parole officer's (non-active) failure to supervise parolee who assaulted the plaintiff, plaintiff's claim that officer negligently recommended parolee for employment and provided misleading information in support of a recommendation not barred). See also cases cited in Kent, 437 Mass. at 319 n.9, 771 N.E.2d at 776 n.9 (describing cases where cause of action existed due to affirmative acts).

Ward, at 14-15.

The Defendant-City will argue that the different facts between this case and Ward dictate a different outcome. To be sure, the chase in Ward was more protracted and the conduct of the

4

officers *arguably* more reckless.[1] But there is no meaningful, legal distinction between the "mere negligence" arguably committed by Defendant-Finneral and the "way-big negligence" arguably committed by the officers in Ward.

A jury could reasonably conclude that Finneral was negligent when he (1) reached 70 MPH on a residential street (Exhibit 2, Trial Transcript, pg. 8), (2) ran a stop sign (Exhibit 2, pg. 13), (3) went "bumper-to-bumper" with Zazarra (Exhibit 2, pg. 12), (4) did so in a "smooth" car (Exhibit 1, pp. 44-45), (5) failed to even attempt to honk his horn (Exhibit 1; pg. 48), (6) did this where one would expect to see pedestrians (Exhibit 1, pg. 66), (7) could not have had a good reason to initiate the chase because he could not have seen any drug transaction from 200 feet away (Exhibit 1, pg. 36), and (7) Zazarra had no money or drugs in his car or in his possession in any event. That is enough for a jury to find that Finneral was negligent.

A jury could also decide that Defendant-Finneral was negligent and the he was an "original cause" of Anagnos' death. There is no dispute that Finneral chased Zazarra. Zazarra has testified that he did not know that the people behind him were police officers. Zazarra made a statement against interest that he thought the smooth car was "either a robbery or the police." "Didn't know, didn't want to take a chance at that time." (Exhibit 3, pg. R.19.) He said he thought Hultgren and Finneral were "heisters" who were going to "ice" (kill) him. (Exhibit 3, pg. R.41.) Zazarra also testified that, "Nobody ever told me he had a badge, nobody said, stop- police, nobody said squat to me like that. All I heard was, slow that fucking car down, and there was a barrel of a gun pointed at me." (Exhibit 3, pg. R.42.)

---

[1] On the other hand, the villain in *Ward* was driving the wrong way on I-93. That certainly made him more dangerous to the public than Zazarra.

On these facts, the police officers could reasonably be found to be the "original cause" of the high-speed pursuit. Even a "good citizen" might flee at high speed from Finneral and Hultgren on the facts described by Zazarra.

Finally, the Defendant-City's argues that *Anagnos* is the original cause of his own death. This is a cruel argument and, in any event, enjoys no factual support. The City appears to be inviting the court or the jury to speculate that Mr. Anagnos was engaged in an act of suicide-by-vehicle.

       b.   Proximate Cause

The City argues, as did the City of Boston in the <u>Ward</u> case, that the plaintiffs "cannot prove that any action of the City proximately caused the decedent's death…." In reviewing this argument, one must keep in mind that the City is liable for Officer Finneral's negligence by operation of the Massachusetts Torts Claim Statute.

Judge Dein dealt with the same argument in <u>Ward</u>. Her opinion is, again, deserving of extended quotation. The court held:

> Equally unpersuasive is the City's claim that the Officers' conduct was not the proximate cause of Ward's injuries, and that Hicks' conduct was an intervening, superseding cause. See City's Mem. at 9-10. "Whether negligent conduct is the proximate cause of an injury depends . . . on whether the injury to the plaintiff was a forseeable result of the defendant's negligent conduct." <u>Kent</u>, 437 Mass. at 320, 771 N.E.2d at 777. "If a series of events occur between the negligent conduct and the ultimate harm, the court must determine whether those intervening events have broken the chain of factual causation or, if not, have otherwise extinguished the element of proximate cause and become a superseding cause of the harm." <u>Id</u>. at 321, 771 N.E.2d at 777. In the instant case, there is sufficient evidence for a jury to find that Hicks' actions, and the resulting collision, were foreseeable consequences of the defendants' actions. See <u>Jackson v. Town of Milton</u>, 41 Mass. App. Ct. 908, 669 N.E.2d 225 (1996) (jury finds Town liable for injuries sustained by innocent motorist when he was struck by car driven by someone fleeing from police in a

> high-speed chase).
>
> In sum, the instant case differs significantly from those where immunity was granted in light of the public employer's simple failure to prevent a harm. See, e.g., Jacome, 56 Mass. App. Ct. at 490, 778 N.E.2d at 979-80 (Commonwealth immune from suit by drowning victim's family for failure to warn or otherwise prevent swimming under dangerous conditions since claim was that public employees should have prevented harm, and they did not affirmatively contribute to dangerous situation); Brum, 428 Mass. at 696, 704 N.E.2d at 1155 (Town immune from claim that school and officials failed to prevent student from being killed). Consequently, the City's motion for summary judgment as to Count I is denied.

Ward, at 15-16.

A jury could reasonably conclude that injury to one pedestrian or another was the foreseeable result of Defendant-Finneral's negligent actions. He sped through a residential area during a time when one would expect to see pedestrians (Exhibit 1; pg. 66.) He knew he was driving a smooth car with no sirens, lights, or markers. (Exhibit 1, pp. 44-45, 48- 49 and 51 – 52.) He failed to stop or slow down for traffic signals (Exhibit 2; pg. 9 and 13.) He never even bothered to attempt to honk his horn. (Exhibit 1; pg. 48.)

Under these and the other circumstances described above and in the Plaintiff's undisputed facts, injury to a citizen was foreseeable.

> c. *Count III for Negligent Infliction of Emotional Distress*
>
>> i. *The Plaintiff, Amy Anagnos cannot prove that any action of the City caused the untimely end of her relationship with her spouse*

In making this argument, the City makes several assumptions that are belied by common experience. The City effectively submits that (1) people who file for divorce never reconcile, (2) husbands who are not perfect husbands can never improve, and (3) a woman cannot love a man who is not kind to her.

The fact is that Amy Anagnos had a relationship with her husband prior to his death. She hoped for reconciliation. (Exhibit 4; Amy Anagnos (Barnes) deposition, pg. 32) ("We were together for 10 years…. I wanted to do whatever I could to salvage the marriage.") She hoped that filing for divorce would awaken in him a realization that he needed to change. (Exhibit 4, pg. 32.) Amy Anagnos testified that "I loved him a lot." Id.

All of the plaintiff's hopes to salvage her marriage and to reconcile with her husband were certainly dashed when Mr. Anagnos died. It is for the jury to decide what Amy Anagnos lost and to place a value upon that loss. The jury might give her one dollar. It might give her a great deal more. Damages such as these are simply not an issue appropriate for summary judgment.

>    ii.    *The Plaintiffs cannot prove the elements of negligent infliction of emotional distress.*

The City's rendition of the elements for the negligent infliction of emotional distress in Massachusetts is just plain wrong. The City cites Rodriquez v. Cambridge Housing Authority, 443 Mass 697, 701 (2005). But the page of Rodriquez selected by the City is **not** a statement of the current law. It was the SJC's rendering of the historical rather than current elements of the claim. The Rodriquez Court was reciting what *used to be* required to establish the tort in cases such as Payton v. Abbott Labs, 386 Mass. 540, 547, 437 N.E.2d 171 (1982), decided 23 years earlier.

If the City had read Rodriquez a bit further, it would have learned that, "[T]his court relaxed the physical harm requirement in Sullivan v. Boston Gas Co., 414 Mass. 129, 134, 605 N.E.2d 805 (1993)." The SJC has, in fact, relaxed the elements of the claim a great deal more.

There is no longer any requirement of proving "physical harm" to recover emotional distress damages in a negligence action. The defendant's contrary position is a throw-back to

days and law gone by.  As the Appeals Court held in Kelley v. Brigham & Women's Hospital, Inc., 51 Mass.App.Ct. 297 (2001):

> Prior to Sullivan v. Boston Gas Co., 414 Mass. 129, 134 (1993), a plaintiff seeking to recover for negligent infliction of emotional distress had to allege and prove physical harm resulting from the conduct that caused the distress and the physical harm had to be "manifested by objective symptomatology and substantiated by expert medical testimony." Payton v. Abbott Labs, 386 Mass. 540, 556 (1982).  *This physical harm requirement was refined* in Sullivan, 414 Mass. at 134 "so as to achieve a just result in this case and to strike a proper balance between the fear of fraudulent claims and the danger of shutting the doors of the courthouse to worthy plaintiffs."
>
> Kelly, at fn. 5. (Emphasis added.)

According to Migliori v. Airborne Freight Corp., 426 Mass. 629, 631 (1998), the SJC has "abandoned the so-called physical harm rule." Id., citing Sullivan at 414 Mass. 129 (1993).

Migliori relaxed the old "physical harm" requirement to merely require "some" objective corroboration as an alternative to physical harm. Id., at 631.

In fact, there is no requirement for medical testimony concerning any physical harm at all.  The Appeals Court, citing Sullivan, has held that:

> [W]e see no *requirement* for medical evidence in Sullivan.  As we read that case, it holds that the absence of medical evidence could make it more difficult, *but not impossible*, for a plaintiff to meet his burden of producing "sufficient objective evidence of physical manifestation of mental distress to survive a summary judgment motion." Sullivan v. Boston Gas. Co., 414 Mass. at 139.
>
> Bresnahan v. McAuliffe, 47 Mass.App.Ct. 278, 283 (1999). (Emphasis in original.)

Under more recent SJC precedent, the nature of the injury-causing event is itself evidence of physical harm.  For instance, the Supreme Judicial Court has held that a mother's claim of distress at seeing her child being injured would naturally give rise to an emotional distress claim such as the one at bar.  Quoting authorities, the Migliori Court held:

> As a leading text noted: "It seems sufficiently obvious that the shock of a mother at danger or harm to her child may be both a real and a serious injury. All ordinary human feelings are in favor of her action against the negligent defendant." W.L. Prosser & W.P. Keeton, Torts § 54, at 366 (5th ed. 1984).
>
> Migliori, at 426 Mass. 629, 632-33.

The SJC has also held that the *type of event* that causes a person's emotional distress injury is evidence that can be used by the plaintiff to corroborate her claim. Sullivan, supra, at 414 Mass. 140. ("Further, the nature of the incident that caused the plaintiffs' alleged mental distress corroborates the genuineness of their claims.") (Emphasis added.)

The event that caused Theodore's death is the kind of thing that might very well produce shock, horror, and emotional distress. Amy Anagnos testified that she had regular conversations with Mr. Anagnos after she filed for divorce. (Exhibit 4; Amy Anagnos (Barnes) Deposition, pg. 34.) She testified that, after his death, she had to consider whether to return to work or take some time off (Id. pg. 35), and that she "ended up not being able to get out of bed a lot in the morning." Id.

Under current Massachusetts law, the plaintiff has stated a proper claim for the negligent infliction of emotional distress.

5.   The Plaintiffs Cannot Prove Conscious Pain and Suffering

This claim by the City is condradicted by the record testimony of Joyce Powers, a disinterested witness. She testified that Mr. Anagnos let out a cry of agony when he heard the siren of the approaching ambulance. (Exhibit 5; Deposition of Joyce Powers, pg. 11.)

Ms. Powers' testimony would permit a jury to conclude that Mr. Anagnos did suffer conscious pain and suffering. All of the evidence cited by the Defendant-City is information that necessarily came *after* Ms. Powers witnessed the decedent's pain and agony.

      6.      Call for Medical Assistance

The plaintiff is not pressing any cause of action derived solely from a delay in the City's call for medical assistance.

      7.      Standing

The City states that the court should enter judgment for the City because no plaintiff has standing to bring a suit for wrongful death. If there is a technical defect in the caption of the case, then the plaintiff hereby moves for leave to cure the technical defect. There could be no possible prejudice to the City if the court were to grant such a motion. The City admits in a footnote that "[Amy Anagnos] is the executrix of the Estate of Theodore Anagnos." (City's Brief, pg. 14, fn1.)

## RELIEF REQUESTED

WHEREFORE, the plaintiffs request that the court:

(1)   Deny the City's motion as to all claims that remain contested;

(2)   Grant the plaintiff leave to amend the caption of the Complaint; and

(3)   Grant such other relief as is just and equitable under the circumstances.

Respectfully Submitted,

/s/ Daniel S. Sharp_____
Daniel S. Sharp (BBO 565524)
Attorney for Plaintiff
196 Atlantic Avenue
Marblehead, MA  01945
781-639-1862

## CERTIFICATE OF SERVICE

The undersigned certifies that he/she caused a true copy of the document above to served by ECF upon on all counsel of record on July 17, 2006.

/s/ Daniel S. Sharp_____