turned on his overhead rotating lights, yelled to the boys to stop, and pulled his patrol car closer to Smith's, attempting to pen the motorcycle in.")

By contrast, there is no claim in this case that Defendant-Finneral's partner, Officer Hultgren, had identified himself as a police officer. (See, Defendant's Statement of Undisputed Facts.) (See, Exhibit 1; Finneral DT, pp. 38 – 41.) Nor is it obvious that Zazarra had committed any offense at all.

Before the officer in Lewis gave chase, the motorcyclist was already operating at a "high speed." Id. It cannot reasonably be argued that the officer in Lewis initiated the chain of events that lead to the plaintiff's death.

By contrast, it was Defendant-Finneral's actions that initiated the high speed chase in the case at bar. (See, Defendant's Brief, pg. 2.)

Ignoring the "context" that the Lewis Court said was important ("**other contexts** might 'shock the conscience' and give rise to § 1983 liability." Id., at 850), Defendant-Finneral claims that **only** an intention to injure can lead to liability. This notion was rejected in Chavez v. Martinez, 538 U.S. 775 (U.S. 2003), where the Court said that official conduct is "**most likely** to rise to the conscience-shocking level" where it is "conduct intended to injure in some way unjustifiable by any government interest." Id., at 849, 140 L Ed 2d 1043, 118 S Ct 1708. Chavez v. Martinez, 538 U.S. 760, 775 (U.S. 2003). (Emphasis added.)

The Chavez Court's post-Lewis statement that substantive due process is "**most likely**" to be violated where injury is intended cannot be squared with the defendant's argument that substantive due process can **only** be offended where injury is intended.

In this case, by marked contrast, there were no such observations of highly suggestive activity, no sirens, no lights (Exhibit 1; pg. 53), no use of the police vehicle's horn (Exhibit 1; pg. 48), and a higher rate of speed (Exhibit 2; pg. 8)..

Defendant-Finneral also relies upon Boveri v. Town of Saugus, 113 F.3d 4, 5 (1st Cir. 1997). In that case, there was no suggestion that the officers intended to cause harm or to increase the suspect's legal plight. Yet the First Circuit held that the case, "tests the margins of the 'shock the conscience' standard." Id., at 113 F.3d 5.

In Boveri, the police officers used their blue lights and siren, the chase took place on the six-to-eight lane Route 128, and speeds reached 80 MPH. The officers followed, activating their siren and blue lights, and the officers remained "a few car lengths" behind the suspect's vehicle. Id., at 113 F.3d 5-6. The First Circuit also found that the officers "were justifiably concerned that the driver was under the influence of alcohol." Id., at 6.

Under those circumstances, the First Circuit affirmed summary judgment for the defendant officers. Those facts are clearly distinguishable from the case at bar.

First Circuit precedent does not, when viewed in its factual context, assist Defendant-Finneral.

## MATERIAL FACTS IN DISPUTE

There are material facts in dispute. Not the least among them is how fast Officer Finneral was driving. He claims he was going 50 MPH. (Defendant's Statement of Facts, # 18.) But Joyce Powers testified that he was going "at least seventy miles per hour" in pursuit of Zazzara. (Exhibit Exhibit 2; Trial Transcript, May 27, 2003, pg. 8.)

Officer Finneral claims he kept a reasonably safe distance between vehicles (about 200 to 300 feet) (Exhibit 1; pg. 67), but Powers testified that the cars were "bumper to bumper." (Exhibit 2, pg. 9.)

Officer Finneral claims that he slowed for the stop signs, but Witness Powers stated that "just flew out and just kept going." (Exhibit 2; pg. 9) and that the "second car" (which would have been Finneral's) "didn't stop at the stop sign." (Exhibit 2; pg. 13.)

In short, Defendant-Finneral's description of the chase is considerably more benign than the chase observed and described by Witness Powers. These are plainly material facts in the context of a high-speed pursuit.

1. Did Finneral Intend to Cause Injury or Worsen Zazarra's Plight?

Defendant-Finneral argues that, In Lewis, "The Supreme Court further noted that ... 'we hold that high-speed chases with no intent to harm suspects physically or worsen their legal plight do not give rise to liability'" under Section 1983. (Defendant's Brief, pg. 5.)

The evidence against Zazarra at the time Finneral instigated the pursuit was weak. Defendant-Finneral was *not* conducting a drug surveillance on the day in question. (Exhibit 1; pg. 22.) No drugs or contraband were found on Zazarra or in his car. (Exhibit 1; pg. 77.)

The criminal charges against Zazarra stemmed solely from the high-speed chase. On this evidence, a jury might reasonably find that Finneral's actions were intended to worsen Zazarra's legal position. This would allow the Section 1983 claim to proceed, even on the Defendant's version of the law.

Whether Defendant-Finneral intended such an outcome should not be the subject of summary judgment. It is well-established that Issues of motive and intent are particularly within

3.  Agreed.

4.  Agreed.

5.  Denied. Office Finneral refused to answer the question whether he actually saw something being transferred from one person's hand to another's. (See, Exhibit 1; Finneral DT, pg. 27.) Contrary to one portion of his testimony, Officer Finneral testified he <u>believed</u> a transaction took place (Exhibit 1; pg. 27, lines 7 – 23), while refusing to state how that belief came about. As the defendant contradicts his own testimony on whether a transaction actually did occur, the allegation is **not** an undisputed fact.

6.  Denied for the reasons stated above.

7.  Agreed.

8.  Agreed.

9.  Agreed.

10. Denied because the entirety of the allegations are not supported by the cited authority for the statement.

11. Agreed that the vehicles pulled next to each other on Ashton Street, not in the parking lot.

12. Agreed.

13. Agreed.

14. Agreed.

15. Agreed.

16. Agreed.

17. Denied that the Mercedes was in a parking lot. It was actually in a looped driveway. The balance of the allegation is agreed.

2

18. Denied. (See # 27, below.) Finneral, himself, testified that the Mercedes was going 70 MPH on Willard Street. (Exhibit 1; Finneral DT, pg. 43.)

19. Agreed.

20. Agreed.

21. Agreed.

22. Agreed.

23. Denied. A jury could so infer. (See, Opposition Brief.)

24. Denied. A jury could so infer. (See, Opposition Brief.)

25. Agreed.

## PLAINTIFF'S FURTHER STATEMENT OF UNDISPUTED FACTS

26. A disinterested witness, Joyce Powers, testified under oath (Exhibit 2; pg. 5, line 7) at the criminal trial of Commonwealth v. Thomas Zazzara, Middlesex Superior Court No: 2002-1379-001-003.

27. Ms. Powers testified that Defendant-Finneral's car was driven "at least seventy miles per hour" in pursuit of Zazzara. (Exhibit 2; Trial Transcript, May 27, 2003, pg. 8.)

28. Ms. Powers testified that the Zazarra and Finneral vehicles were "bumper to bumper" and that they "just flew out and just kept going." (Exhibit 2; pg. 9.) By contrast, Defendant-Finneral testified that he was "two or three hundred feet behind [Zazarra]." (Exhibit 1; pg. 66.)

29. Ms. Powers testified that, "I stopped because I thought they were crazy." (Exhibit 2; pg. 9.)

30. Ms. Powers testified that the "second car" (which would have been Finneral's) "didn't stop at the stop sign." (Exhibit 2; pg. 13.)

31. Ms. Powers testified:

> No. The first one come out and the other one was bumper to bumper, like here comes one and her comes the other one, together.... And then the other one was on the bumper." (Exhibit 2; pg. 12.)

32. Defendant-Finneral never attempted to blow his horn to alert other drivers or pedestrians to the high-speed chase that was in progress. (Plaintiff's Exhibit 1; Finneral DT, pg. 48.)

33. The car Defendant-Finneral was driving had no flashing lights, no siren, no grill lights, and no police radio (Exhibit 1; pp. 44 – 45) and no strobe light (Id., pp. 48- 49 and 51 – 52.)

34. Unmarked cars with sirens and flashing grill lights were available to the officers on the day in question. (Exhibit 1; pg. 53.)

35. Defendant-Finneral was *not* conducting a drug surveillance on the day in question. (Exhibit 1; pg. 22.)

36. Defendant-Finneral did *not* stop for either of two stop signs. (Exhibit 1; pg. 63.)

37. Defendant-Finneral testified that he would expect to see pedestrians on the streets where the pursuit occurred. (Exhibit 1; pg. 66.)

38.  No drugs were found on Mr. Zazarra. (Exhibit 1; pg. 77.)

Respectfully Submitted,

/s/ Daniel S. Sharp
Daniel S. Sharp (BBO 565524)
Attorney for Plaintiff
196 Atlantic Avenue
Marblehead, MA  01945
781-639-1862

CERTIFICATE OF SERVICE

The undersigned certifies that he/she caused a true copy of the document above to served by ECF upon on all counsel of record on April 28, 2006.

/s/ Daniel S. Sharp